



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
04/11/2011

| | |
|---|---|
| IN RE: § | |
| § | |
| ENDOVASC, INC. § | |
|    DEBTOR § | CASE NO.  08-30581-H5-7 |
| § | |
| GEORGE D. GORDON, SR. § | |
|    PLAINTIFF § | ADVERSARY NO. 09-3420 |
| § | |
| VS. § | |
| § | |
| ENDOVASC, INC. and § | |
| DAVID SUMMERS § | |
|    DEFENDANT(S) § | |

## MEMORANDUM OPINION

Before the Court is the complaint of George D. Gordon to determine the ownership of shares of Nutraceutical Development Corporation (NDC). This Court has jurisdiction under 28 U.S.C. § 1334 and 157. This is a core proceeding. By order dated May 17, 2010, the Court held that Gordon is estopped to re-litigate the decision of the Eighth Judicial District Court for the State of Nevada which held that what is known by the parties as "Share Certificate No. 2" is a forgery and void. Accordingly, this Court proceeded to trial to determine the extent of whether Gordon had any other ownership interest as he alleged in his complaint in NDC. Following a review of the evidence and observing the witnesses, the Court finds that Gordon owns no NDC stock. All NDC stock at issue here is owned by the trustee and David Summers (Summers).

## FINDINGS OF FACT

George D. Gordon, Sr. is a resident of Conroe, Texas, and is a licensed attorney in Texas who represented NDC regarding some patent litigation. Endovasc, Inc. (Endovasc) is a Nevada corporation and the Chapter 7 debtor in this proceeding. Debtor, Endovasc is the parent corporation

of NDC a Nevada corporation. The Chapter 7 Trustee is David J. Askanase. Summers is an early investor in Endovasc and former president of both Endovasc and NDC. Diane Dottavio (Dottavio) is a board member who later attempted to replace Summers as President of Endovasc and NDC.

On August 10, 2005, Summers filed Summers, et al. v. NDC, et al., as Case No. A-508327, in the Eighth Judicial District Court for the State of Nevada. The named defendants were: (1) NDC; (2) M. Dwight Cantrell, individually and in his corporate capacity; (3) Diane Dottavio, individually and in her corporate capacity; (4) Melissa Rogers, individually and in her corporate capacity; and (5) Barbara J. Richardson, individually and in her corporate capacity. The Nevada case was set for trial in February 2008.

On February 3, 2008, debtor, Endovasc filed its voluntary petition in Houston. Dottavio signed the petition and later the schedules and statement of financial affairs, as president of Endovasc. On February 8, 2008, the Nevada Defendants (including Dottavio), through their joint attorney, filed a "Suggestion of Bankruptcy" in the Nevada case. The defendants represented to the Nevada court that " ...on February 3, 2008, a Voluntary Petition was filed by <u>Endovasc, Inc. the parent corporation of Defendant Nutraceutical Development Corporation,</u> for relief under Chapter 7 of Title 11, United States Code, in the Southern District of Texas, Houston Division, which case remains pending and is docketed as Case No. 08-30581. <u>As a result of a filing of the Petition, certain acts and proceedings against Endovasc, Inc. and its property is (sic) stayed as provided by 11 U.S.C. Sec. 362.</u>" (Emphasis added). Because defendants filed this suggestion of bankruptcy, the Nevada court stayed the trial.

However, when Dottavio subsequently filed and signed schedules under penalty of perjury in the Endovasc bankruptcy, she never included shares in NDC as property of the Endovasc estate.

Consequently, the Nevada Court took note of this omission and the Court reinstated the scheduled trial.

On February 17, 2009, a non-jury bench trial began in Nevada. During trial, Dottavio, claiming to be President of both NDC and Endovasc, testified that on February 8, 2008, the date Endovasc filed bankruptcy, Endovasc was the parent corporation of NDC.[1] Dottavio testified that in 2006 Debtor's shares in NDC were transferred to George D. Gordon, Sr. However, Dottavio explained that the transfer to Gordon of NDC's shares was not finalized on the debtor's petition date, February 3, 2008. Further, Dottavio testified that when trial began on February 17, 2009 in Nevada, NDC had not issued Gordon any share certificates.

During the Nevada trial, Gordon testified that his only claim to ownership of NDC came from "Share Certificate No. 2" which represented 75,000,000 shares. In addition, Gordon testified that he had no personal knowledge of any shares issued by NDC other than NDC "Share Certificate No.2."

After trial, the Nevada Judge issued detailed "Findings Of Fact And Conclusions Of Law." The judge found fully in favor of Summers and the other plaintiffs in the Nevada case.[2] The Court found in part:

> (a) The 2002 "Share Certificate No. 2,"representing Debtor as the owner of 75,000,000 shares of NDC, is not authentic, is a forgery, is invalid and void, and Debtor does not own 75,000,000 shares in NDC; and
>
> (b) Debtor owns 48,000,000 shares of NDC, which were issued as part of NDC's original August 7, 2003, issue of stock.

---

[1] Dottavio had no explanation for why her attorney filed a suggestion of bankruptcy that falsely claimed that the stay prevented the Nevada trial against NDC.

[2] Appendix A attached.

## HOUSTON ADVERSARY TRIAL

Now in this Court Gordon has produced new documents, not offered to the Court in Nevada. Gordon has produced a Promissory Note And Security Agreement (the "75MNote"), showing a date of May 5, 2006, which purports to provide Gordon with a security interest in NDC "Share Certificate No. 2." Gordon testified that he prepared the 75M Note, and that it was signed by Dottavio, as President of the Debtor, and by Kim Mittag.[3]

Now for the first time Gordon has further produced an "Irrevocable Stock Power," showing a date of May5, 2006, with purports to provide Gordon with authority to transfer "Share Certificate No. 2"(the "75M Stock Power"). The "Share Certificate No. 2" referenced in the 75M Note is the same share certificate found by the Nevada Court to be a forgery and void.

Now Gordon has further produced another Promissory Note And Security Agreement(the "48M Note"), also showing a date of May 5, 2006, which purports to provide Gordon with a security interest in NDC "Share Certificate No. 109." Gordon testified that he himself prepared the 48MNote, and that it was signed by Dottavio, as the President of Debtor, and by Mittag. The 48M Note produced by Gordon refers to NDC "Share Certificate No. 3." Gordon testified that he never undertook any effort to determine the value of "Share Certificate No. 109" before agreeing to accept it as security for a debt in excess of $250,000. Defendants point out that when testifying on February 17, 2009 in Nevada, Gordon professed no knowledge of any share certificate other than Share Certificate No. 2.

Gordon has further produced both a "Stock Power" and an "Irrevocable Stock Power," both claiming a date of May 5, 2006, and both purporting to provide Gordon with authority to transfer

---

[3] Neither Dottavio nor Mittag were called as witnesses at trial.

"Share Certificate No. 109" (the "48M Stock Power"). Gordon testified that he has never exercised his alleged $48M Stock Power.

## CONCLUSIONS OF LAW

With regards to Gordon's contention that he should be able to re-litigate the issues resolved by the Nevada Court, the doctrine of full faith and credit requires this Court to give judgments from the Eighth Judicial District Court for the State of Nevada the same preclusive effect that such judgments would enjoy in the State of Nevada.[4] "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."[5] The Eighth Judicial District Court for the State of Nevada is a court of competent jurisdiction. In deciding whether the application of collateral estoppel is appropriate, the Court "must look to the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect."[6] Accordingly, in this case, the Court must look to Nevada law concerning the application of collateral estoppel. Nevada law requires that the following elements be established before the doctrine of collateral estoppel may be applied:[7]

    a.    The issue decided in the prior litigation must be identical to the issue presented in the current action;

---

[4] See In re Erlewine, 349 F.3d 205 (5th Cir. 2003).

[5] Id. (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5 (1979)).

[6] Matter of Gober, 100 F.3d 1195, 1201 (5th Cir. 1996) (citing Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)).

[7] Five Star Capital Corp. v. Ruby, 194 P.3d 709, 714 (Nev. 2008)(citing University of Nevada v. Tarkanian, 110 Nev. 581, 598, 879 P.2d 1180, 1191 (1994)).

  b. The initial ruling must have been on the merits and have become final;

  c. The party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and

  d. The issue must have been actually and necessarily litigated.

The issue presented in this adversary proceeding is whether Share Certificate No. 2, upon which Gordon's claim to ownership rests, represents a valid and enforceable ownership interest in NDC. In the Nevada case, the Court expressly ruled that "Share Certificate No. 2" was not authentic, a forgery, invalid, and void." Accordingly, the issue decided in the Nevada case is identical to the issue presented in this matter. The judgment rendered in the Nevada case was on the merits and has become final. Gordon has a substantive legal relationship with the Nevada defendants. He maintains he derived his security interest in NDC stock from the same stock certificate and the same defendants directly involved in the Nevada litigation. Taylor v. Sturgell, 553 U.S. 880 (2008). The issue of the validity and enforceability of "Share Certificate No. 2" was actually and necessarily litigated in the Nevada case. This Court finds that the preclusion issue doctrine bars re-litigation. See e.g. Kahn v. Morse & Mowbray, 121 Nev. 464, 117 P.3rd 227 (2005). Accordingly, since Share Certificate No. 2, was found invalid by the Nevada Court, Gordon holds no stock derived from Share Certificate No. 2.

To the extent that Gordon newly relies on other stock certificates for his claim to ownership of NDC stock, he has failed in his burden of proof to show that these instruments are legitimate documents issued by authorized legitimate corporate officers of NDC. The Court finds that Gordon lacks credibility.

Moreover, even though Gordon claims Dottavio transferred NDC stock to him in 2006, Dottavio also filed quarterly Forms 10-Q in December 31, 2006 and March 31, 2007 which certified to the Securities and Exchange Commission that Endovasc was the 100% owner of NDC on those dates.

Debtor is the valid holder of NDC "Share Certificate No. 109," which represents 48,000,000 shares of NDC stock. The 75M Note, 75M Stock Power, 48M Note, and 48M Stock Power, are not authentic, appear to have been created subsequent to Debtor's initiation of this proceeding, and do not constitute valid or enforceable agreements. Gordon holds no stock derived from the invalid NDC "Share Certificate No. 2." Gordon holds no stock derived from NDC "Share Certificate No. 109." Debtor is and has been at all times the rightful holder of 48,000,000 shares of NDC stock, as represented by NDC "Share Certificate No. 109;" The Promissory Note and Security Agreements, and each of them, dated May 5, 2006, are invalid and unenforceable; The Stock Powers, and each of them, dated May 5, 2006, are invalid and unenforceable; and Gordon holds no right to Debtor's shares in NDC. Accordingly, "Share Certificate No. 109," and the stock ownership represented by it, remains an asset of the Debtor. Gordon is not listed by Debtor as a secured creditor, and Gordon has not filed a Proof of Claim in this proceeding.

Signed this 8th day of April, 2011 at Houston, Texas.

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE